## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

Arthur Anderson, et al.,

*Plaintiffs-Appellants*,

v.

Lockheed Martin Corporation, et al.,

*Defendants-Appellees*

Appeal from the United States District Court
for the Middle District of Florida

No. 6:21-cv-1363-RBD-DCI

## APPELLANTS' REPLY BRIEF

Josh Autry
Morgan & Morgan
333 W Vine St, Ste 1200
Lexington, KY 40507
859-899-8785
jautry@forthepeople.com

Rene F. Rocha
Morgan & Morgan
400 Poydras St, Ste 1515
New Orleans, LA 70130
954-318-0268
rrocha@forthepeople.com

Adam P. Bergeron
Morgan & Morgan
47 Maple St, Ste 104D
Burlington, VT 05401
407-974-2075
adambergeron@forthepeople.com

*Attorneys for Plaintiffs-Appellants*

**No. 24-12047**
**Arthur Anderson, et al v. LMT, et al**

**C**ertificate of **I**nterested **P**ersons

Albanis, Panagiotis V.

Anderson, Arthur

Appel, Marie N.

Askren, Jillian M.

Autry, Josh

Bergeron, Adam P.

Brackett, Elizabeth

Brunelle, Justin

Brunelle, Meredith

Citera, Francis A.

Dalton Jr., Roy B., U.S. District Judge

Davis, Michael

DeMilt, Donna

Ebert, Andrew

Estate of Carol Davis

Flury, Katherine

Goertz, Donald

Goldrosen, Eitan

Goldschmidt, Elaine

Goldschmidt, Victor

Goodson, Logan

Havens, Brendan

Henderson, Craig

Hopper, Ryan T.

Innes, Andrew

Innes, Morgan

Irick, Daniel C., U.S. Magistrate Judge

Jackson, Raymond D.

Jarecki, Shawn K.

Juda, Laura

Juda, Mark

Kantor, Daniel

Kantor Neurology

Kemp, Brian

Kemp, Kelly

Kendall, Ronald J.

Khasin, Irina

Kiely, Kevin

Komatsu, Naho

Komatsu, Naoyuki

Kozak, Jeff

Lockheed Martin Corporation LMT

McGarry, Ann

McGarry, Michael

Miller, Gretchen N.

Moore, Joshua D.

Morgan & Morgan, P.A.

Morgan, T. Michael

Muddell, Jeffrey

Muddell, Stephanie

Outing, Marie

Panigrahy, Dipak

Petosa, Frank M.

Porter, Bryan C.

Ram, Michael F.

Ramsey, Patricia

Rocha, Rene F.

Ross, Renee

Rutledge, Eric

San Martin, Emilio

Sahu, Ranajit (Ron)

Sheen, Kristen

Slusarz, Brian

Stone, Wendy

Torres, Christopher

Tosti, Helen

Tosti, John

University City Property Management III, LLC

Weinstein, David B.

White, Brenda

White, Christopher

Winn, Jennifer N.

Certificate of Interested Persons ............................................................ C-1

Table of Contents ....................................................................................... i

Table of Citations ..................................................................................... ii

Introduction ................................................................................................1

Argument.....................................................................................................2

   I.  The district court abused its discretion when it excluded Dr. Panigrahy on the basis of a credibility issue......................................................2

      A.  Lockheed and the district court fail to acknowledge that Dr. Panigrahy conducted an original general causation analysis separate from his study summaries......................................................5

      B.  Lockheed and the district court ignore the general causation evidence and only analyze the allegation of plagiarism............................9

   II.  The Court does not have jurisdiction over the issues in Argument § II of Lockheed's brief. .........................................................13

  III.  The district court was required to review Drs. Kendall and Cowan's general causation opinions. ......................................................21

Conclusion ................................................................................................22

**Cases**

*Adams v. Laboratory Corp. of Am.*, 760 F.3d 1322 (11th Cir. 2014)……………… 2

*Allison v. McGhan Med. Corp.*, 184 F.3d 1300 (11th Cir. 1999)………………….. 3

*Edwards v. Prime, Inc.*, 602 F.3d 1276 (11th Cir. 2010)…………………. 1, 13, 16

*English v. City of Gainesville*, 75 F.4th 1151 (11th Cir. 2023)…………………... 17

*Fogade v. ENB Revocable Tr.*, 263 F.3d 1274 (11th Cir. 2001)……………… 13, 15

*Hemmings v. Tidyman's Inc.*, 285 F.3d 1174 (9th Cir.2002)……………………... 11

*Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183 (11th Cir. 2010)…………… 3, 8

*In re Deepwater Horizon BELO Cases*, 119 F.4th 937 (11th Cir. 2024)……... 18-19

*Kilpatrick v. Breg, Inc.*, 613 F.3d 1329 (11th Cir. 2010)………………………… 12

*Mims v. U.S.*, 375 F.2d 135 (5th Cir. 1967)…………………………………….. 2

*Moore v. GEICO Gen. Ins. Co.*, 633 Fed. Appx. 924 (11th Cir. 2016)………. 11, 21

*MSP Recovery Claims v. Metro. Gen. Ins.*, 40 F.4th 1295 (11th Cir. 2022)……... 20

*OFS Fitel v. Epstein, Becker and Green*, 549 F.3d 1344 (11th Cir. 2008)………. 17

*Quiet Tech. DC-8 v. Hurel-Dubois UK*, 326 F.3d 1333 (11th Cir. 2003)………… 11

*Rappuhn v Primal Vantage Company*, 2024 WL 2930448 (11th Cir. 2024)……… 4

*Rider v. Sandoz Pharm. Corp.*, 295 F.3d 1194 (11th Cir. 2002)……………… 3, 11

*Rink v. Cheminova*, 400 F.3d 1286 (11th Cir. 2005)……………………………… 2

*Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427 (1956)………………………… 13

*S.H. v. Edwards*, 886 F.2d 292 (11th Cir. 1989)…………………………………… 14

*Spiral Direct v. Basic Sports Apparel*, 2017 WL 11457208 (M.D. Fla. 2017)….. 2-3

*United Fire & Cas. Co. v. Whirlpool Corp.*, 704 F.3d 1338 (11th Cir. 2013)…… 11

*United Industries v. Eimco Process Equip.*, 61 F.3d 445 (5th Cir. 1995)……….. 13

*U.S. v. Feliciano*, 761 F.3d 1202 (11th Cir. 2014)………………………………… 2

*U.S. v. McAllister*, 77 F.3d 387 (11th Cir. 1996)………………………………… 20

## **Rules**

Fed R. Civ. P. 54(b)……………………………………………………. 1, 13-17, 20

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 54(b), this appeal is limited to reviewing the district court's Order (Doc. 399) and determining whether the district court abused its discretion when excluding Dr. Panigrahy on the basis of a credibility issue, and then entering summary judgment against the Plaintiffs, without conducting a *Daubert* analysis of the evidence supporting causation. Defendant does not meaningfully engage with this question, dedicating only a minority of its brief to it (Argument § I), which is unsurprising given that Eleventh Circuit case law unquestionably forecloses expert exclusion on the basis of a credibility issue.

Instead, Defendant uses most of its brief (Argument § II) to discuss dose and exposure issues that are outside of the Court's limited jurisdiction in this Rule 54(b) appeal. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1288 (11th Cir. 2010) ("Appellate jurisdiction over an appeal from an interlocutory decision certified under Rule 54(b) is limited to the rulings or orders certified by the district court.") In the case below, the district court only certified for review its order excluding Dr. Panigrahy (Doc. 399), and so Defendant's argument that the district court erred in a separate order (Doc. 370) and that "[s]ummary judgment was independently warranted" (Argument § II) are not properly before the Court.

The correct outcome of this appeal is simple. The Court should reverse and remand so that the district court may conduct a proper *Daubert* analysis.

## ARGUMENT

### I. The district court abused its discretion when it excluded Dr. Panigrahy on the basis of a credibility issue.

Defendant does not address the wealth of Eleventh Circuit case law offered in Plaintiffs' opening brief showing that a district court may not exclude an expert on the basis of a credibility issue, such as plagiarism, because credibility issues are reserved exclusively for the jury. *See* Appellants' Brief, Arg. § II, pp. 21-24 (citing *Rink v. Cheminova*, 400 F.3d 1286, 1293 fn.7 (11th Cir. 2005) ("a district court cannot exclude an expert because it believes the expert lacks personal credibility"); *Adams v. Laboratory Corp. of Am.*, 760 F.3d 1322, 1335 (11th Cir. 2014) ("credibility determination [of an expert witness] … has always been within the province of the jury"); *U.S. v. Feliciano*, 761 F.3d 1202, 1206 (11th Cir. 2014) ("The jury has exclusive province over the credibility of witnesses…"); *Mims v. U.S.*, 375 F.2d 135, 140 (5th Cir. 1967) ("one of the most generally accepted rules in all jurisprudence, state and federal, civil and criminal, is that the questions of the credibility and weight of expert opinion testimony are for the trier of facts")).

In contrast, Defendant cites only one case on this issue, *Spiral Direct v. Basic Sports Apparel*, 2017 WL 11457208 (M.D. Fla. Apr. 13, 2017), and Defendant misrepresents the holding by suggesting in a parenthetical that plagiarism served as

the sole basis for the expert's exclusion.[1] But, as explained in Plaintiffs' opening brief, it was only **after** exercising its *Daubert* gatekeeping duties that the *Spiral Direct* court found plagiarism "additionally … further supports" the expert's exclusion.

> As acknowledged by Basic's counsel, Kasper is unqualified to give opinions regarding trademark registration. But her opinions regarding other trademark matters demonstrate her unfamiliarity with the subject area and are either unreliable or are unhelpful to the finder of fact. **Additionally**, her plagiarism of large sections of another expert's report, which she did not acknowledge until confronted in her deposition, undermines her credibility and **further supports** that her opinions should be excluded from trial.

2017 WL 11457208, at *3 (emphases added).[2]

The difference here, of course, is that the district court never exercised its *Daubert* gatekeeping duties. To do so, the district court needed to examine the literature cited by Dr. Panigrahy, which it did not do. *See Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1199 (11th Cir. 2010) (noting that "[w]e have carefully and exhaustively reviewed the literature cited by Dr. Hoffman" to determine whether "the literature … provide[s] the necessary support for Dr. Hoffman's opinions to render those opinions admissible under *Daubert*"); *Rider v. Sandoz Pharm. Corp.*,

---

[1] *See* Appellee Brief p. 22.

[2] *Spiral Direct* is further distinguishable because the expert in that case "did not provide any citation or attribution to Nelson as the source of large sections of her report," 2017 WL 11457208 at *2, whereas in this case, Dr. Panigrahy cited all of his sources and only omitted to use quotation marks.

295 F.3d 1194, 1198-1201 (11th Cir. 2002) (evaluating "[t]he scientific evidence presented by plaintiffs in support of their theory of causation"); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1314-15 (11th Cir. 1999) (endorsing "a thorough review of the medical evidence" and "a detailed look at the four epidemiological studies").

Instead of examining the literature and assessing reliability through the lens of *Daubert*, the district court found that "plagiarism ***in itself*** is sufficient reason for exclusion here."[3] This is an abuse of discretion and should be the end of the inquiry on this appeal. *See Rappuhn v Primal Vantage Company*, 2024 WL 2930448, at *1 (11th Cir. June 11, 2024) (finding an abuse of discretion where "[t]he district court didn't perform a proper expert analysis under *Daubert*").

Without any case law supporting that plagiarism, standing alone, can warrant expert exclusion, Defendant attempts to put a square peg into a round hole and turn plagiarism into a reliability issue. But that does not work. The only way to assess reliability is by reviewing Dr. Panigrahy's general causation analysis and his supporting evidence, which has not been done here.

---

[3] Doc. 399 p. 8 (emphasis added); *see also* Doc. 399 p. 11 (concluding that "the rampant plagiarism in Dr. Panigrahy's report leads the Court to conclude that his general causation methodology as a whole is too unreliable to put before a jury").

### A. Defendant and the district court fail to acknowledge that Dr. Panigrahy conducted an original general causation analysis separate from his study summaries.

All of Defendant's allegations of plagiarism are confined to portions of Dr. Panigrahy's initial report where he summarized studies applicable to each chemical, and admittedly copied text from his cited sources when doing so.[4] Outside of those summaries, however, Defendant and the district court fail to appreciate that Dr. Panigrahy conducted his own original general causation analysis consisting of nearly 100 pages in his initial report,[5] with an additional 162 pages of analysis in his rebuttal report.[6] At the beginning of his general causation analysis, where Defendant makes no allegations of plagiarism, Dr. Panigrahy described his methodology:

> As a physician and cancer researcher, I searched for and reviewed the epidemiological studies of human exposure to these 7 carcinogens (TCE, formaldehyde, arsenic, hexavalent chromium, PCE, 1,1,1-trichloroethane, and styrene). I focused on studies which specifically quantified exposure to these 7 carcinogens. As there are no randomized control trials (RCTs) (since it would be unethical to knowingly subject an individual to a carcinogen), the studies available to review were mainly limited to occupational exposure. I reviewed these studies to ascertain if the cancers that I previously identified in the animal carcinogenesis assays as well as the mechanistic studies performed with

---

[4] Doc. 136-3 p. 49 (Tr. at 191:4-5) ("Q. "…there are no quotation marks, right?" A. "Right. And I have the original references, so …"); *id*. at 69 (Tr. at 272:23-25 ("I did take from the [study] abstract and the IARC monograph because that stated the essence of the facts"). Because Dr. Panigrahy acknowledged copying text from his sources, there is no merit to Defendant's assertion of a "cover up" by Dr. Panigrahy. *See* Appellee Brief p. 22-24.

[5] Doc. 136-1 p. 357-455; *see also* Doc. 136-4 (color-coded report showing no allegations of copying in pages 357-455).

[6] Doc. 136-2 p. 2-164.

human & animal cell and tissue studies also occurred in humans exposed to each of these 7 carcinogens. When analyzing human epidemiological studies, it was instructive to examine the Bradford Hill (BH) criteria as part of my evaluation of causal relationship.[7]

Next, after explaining each of the Bradford Hill factors,[8] Dr. Panigrahy set forth his original general causation analysis for each type of cancer suffered by Plaintiffs in this case.[9] By way of example, Dr. Panigrahy analyzed whether TCE can cause kidney cancer:

Decades of research have established a strong link between occupational and environmental exposures to TCE and kidney cancer.[184] TCE is an established kidney carcinogen. IARC and the US EPA have both concluded that TCE is "carcinogenic to humans by all routes of exposure". TCE clearly shows carcinogenic activity in the kidney.[191] There is compelling human evidence from studies of occupational TCE exposure and kidney cancer.[193] For example, TCE is carcinogenic to the human kidney based on results from the tubular system in the human kidney.[206] Human studies are consistent with animal studies in that they both suggest that TCE targets the kidney.[191] Importantly, the kidney is a concordant target site in animals which is clearly identical with cancers observed subsequently in workers exposed to TCE, establishing causality of TCE and kidney cancer in humans. Moreover, TCE has been an extensively studied carcinogen in relation to renal cell cancer risk.[208] There is sufficient evidence in humans for the carcinogenicity of TCE. Epidemiology studies support that TCE causes cancer of the kidney. Therefore, there is robust evidence from epidemiological studies, of both cohort and case-control designs, that TCE exposure can be associated with kidney cancer.[206]

A significant excess risk was estimated for the longest-held job in TCE-exposing industries (odds ratio (OR) 1.80, 95% confidence interval (CI) 1.01–3.20) in a consecutive case-control hospital-based study in

---

[7] Doc. 136-1 p. 359.
[8] Doc. 136-1 p. 360-363
[9] Doc. 136-1 p. 363-451.

Germany.[206] Studies by Buhagen et al (2014) studied the incidence of cancers in a cohort of 997 male workers who, for many years, had been occupationally exposed to TCE.[210] During a 50-year observation period, 13 cases of kidney cancer were observed (7.5 expected; with a standardized incidence ratio of 1.7 and a 95% CI of 1.0 to 3.0), supporting TCE as a kidney carcinogen.[210] Charbotel et al (2006) reported in a case-control study that occupational exposure to TCE induced a significant 2-fold increased risk in kidney cancer.[211]

A dose-response relationship was identified with TCE after adjustment for the confounding effect of tobacco smoking and BMI. After adjusting for smoking and BMI, Fevotte et al (2006) performed a large study in which a total of 402 study subjects (average 3.7 jobs/subject, from 1924 to 2003).[212] Fevotte et al reported a significantly increased odds ratio for renal cell carcinoma for high cumulative dose without peaks, and high cumulative dose with peaks.[212] TCE also showed a high incidence and mortality from kidney cancer as compared to controls in a study in German workers.[215] Taken together, in all types of analysis, the incidence of kidney cancer is statistically elevated among workers exposed to TCE. The tumors observed in these workers were similar in location and histology to those caused by TCE in animals (e.g., rats). Other case-control studies of renal cell carcinoma also showed an association with TCE exposure.[206,222]

Both Defendant and the district court focus so heavily on the issue of plagiarism in the first part of Dr. Panigrahy's report, that they completely miss the most important part where Dr. Panigrahy conducted his general causation analysis.

Because Defendant overlooks all of Dr. Panigrahy's original analysis, it makes incorrect assertions about Dr. Panigrahy's report, such as that "Dr. Panigrahy did not even read the studies he cited" because "every observation" he made about PCE came from IARC monographs or study abstracts.[10] However, that is plainly untrue.

_____

[10] Appellee Brief p. 19-20.

Dr. Panigrahy offered extensive, original analyses of PCE, using nearly twenty pages of his report to independently analyze the key characteristics of PCE,[11] further analyzing PCE with regard to each cancer type in the Bradford Hill portion of his report,[12] providing an additional thirteen pages of analysis regarding the epidemiolocal support for PCE-induced cancer in a rebuttal report,[13] and preparing a ten-page chart displaying PCE study results and study strengths and limitations.[14]

Given the comprehensive, original analyses offered by Dr. Panigrahy with respect to each cancer type in this case, there is no merit to Defendant's argument that Dr. Panigrahy did not exercise "his own 'judgment'" when reaching his general causation opinions. Rather, the only way to assess Dr. Panigrahy's "judgment" is to review his opinions and the literature he cited and evaluate whether the literature "provide[s] enough support for [his] general causation opinion to satisfy *Daubert*'s reliability requirement." *Hendrix*, 609 F.3d at 1199 fn. 11.

---

[11] Doc. 136-1 p. 258-277 (compare to Doc. 136-4 p. 442-461 (showing no allegations of plagiarism in this section)).
[12] *See, e.g.,* Doc. 136-1 p. 365, 367, 370 (analyzing PCE/kidney cancer); Doc. 136-1 p. 373-74 (analyzing PCE/breast cancer); Doc. 136-1 p. 382, 385 (analyzing PCE/blood cancers); Doc. 136-1 p. 401 (analyzing PCE/pancreatic cancer); Doc. 136-1 p. 410, 412-13, 415, 417 (analyzing PCE/liver cancer).
[13] Doc. 136-2 p. 116-128
[14] Doc. 136-2 p. 129-139.

## B. Defendant and the district court ignore the general causation evidence and only analyze the allegation of plagiarism.

Instead of analyzing whether the literature supports Dr. Panigrahy's general causation opinions as required by Eleventh Circuit case law, Defendant and the district court instead focus on color-coded exhibits comparing the words in parts of Dr. Panigrahy's report to the words in sources he cited. Defendant prepared these exhibits to show where Dr. Panigrahy copied text, as well as to fault him where his words did not perfectly match the cited source. However, in either case, Defendant and the district court paid no attention to what the cited sources actually said or whether they support Dr. Panigrahy's causation opinions.

For example, Defendant claims "worst of all" is Dr. Panigrahy's reference to Blair 2003 where his description of the study omitted a phrase ("little evidence of an exposure-response effect") that was contained in the IARC monograph.[15] But, Defendant fails to explain how the omitted phrase from a study on bladder cancer (which is not a cancer type at issue in this case) affects Dr. Panigrahy's causation opinions about other cancer types. Moreover, as Defendant's Figure 3 plainly shows, Dr. Panigrahy cited both Blair 2003 (as endnote 694) and the IARC monograph (as endnote 184), so the reader only needs to turn to those sources to evaluate whether

---

[15] Appellee Brief p. 15, Figure 3.

they support Dr. Panigrahy's opinions.[16] Yet neither Defendant nor the district court did that.

Notably, Defendant's own general causation expert, Dr. Mundt, similarly cited Blair 2003 without using the phrase ("little evidence of an exposure-response effect") that Defendant complains is missing from Dr. Panigrahy's report:

> IARC's conclusion of limited evidence for an association between PCE and bladder cancer was based primarily on reported results from three large occupational cohorts of dry-cleaning workers (Blair et al. 2003; Lynge et al. 2006; Calvert et al. 2011, as cited in IARC 2014). All three reported positive associations for bladder cancer, two of which were statistically significant (Lynge et al. 2006; Calvert et al. 201 [sic]).[17]

If the missing phrase was so important to a general causation analysis, as Defendant implies in its brief, then certainly its own expert would have noted it. To the contrary, Dr. Mundt conceded that Blair 2003 provides undisputed epidemiological evidence of an association between PCE and bladder cancer, which is consistent with Defendant's admission that epidemiological evidence exists for every cancer type at

---

[16] Defendant also claims that Dr. Panigrahy copied content from IARC monographs "without attribution" (Appellee Brief p. 13) but this is untrue. All of the "Figures" set forth in Defendant's brief show that Dr. Panigrahy included extensive citations to his sources, and the IARC monograph applicable to this section of his report is cited numerous times as endnote 184. *See* Doc. 136-1 p. 239-259 (citing the IARC monograph eight times for this section relating to epidemiological studies of PCE and cancer).

[17] Doc 156-1 p. 46.

issue in this case.[18] In fact, in its Appellee brief, Defendant expressly concedes a "causal relationship" between TCE and kidney cancer that is supported by epidemiological evidence.[19]

Given the undisputed epidemiological evidence that exists in the record, and that epidemiology is "the best evidence of causation in toxic tort actions," *Rider v. Sandoz Pharm. Corp.*, 295 F.3d 1194, 1198 (11th Cir. 2002), the district court unquestionably erred when it declined to consider any of that evidence. *United Fire & Cas. Co. v. Whirlpool Corp.*, 704 F.3d 1338, 1341-42 (11th Cir. 2013) (finding an abuse of discretion where the district court excluded expert testimony "on *Daubert* grounds" but failed to consider the evidence supporting the expert's opinion); *Moore v. GEICO Gen. Ins. Co.*, 633 Fed. Appx. 924, 930 (11th Cir. 2016) (holding that the district erred by disregarding expert evidence in a summary judgment ruling because the court "must consider *all evidence* in the record" (emphasis in original)).

---

[18] Doc. 139 p. 24 (chart prepared by Defendant showing that Dr. Panigrahy cited epidemiological studies for every cancer type at issue in this case—i.e., "Substance/Condition Relationships").

[19] Appellee Brief p. 18 and fn. 2. Defendant challenges the study results for TCE/kidney cancer but that is an argument going to weight not admissibility. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003) (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir.2002)) ("in most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility").

Defendant's argument that a district court has "no obligation to independently review an expert's cited scientific literature"[20] has absolutely no support in Eleventh Circuit case law. Defendant cites one case for this point, *Kilpatrick*, but that case demonstrates an extensive review of the literature before the expert was excluded. *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1340 (11th Cir. 2010) ("The district court exercised its discretion and found that each of these articles, both taken together and separately, were not sufficiently reliable…"); *id.* ("As the district court concluded … this argument is belied … by the plain language of the articles…"); *id.* at 1340-41 (examining "the Gomoll study" and "the Chu study"); *id.* (reviewing an "animal study discussing the differences between in vitro and in vivo results").

Nor was the district court asked "to parse more than 1,100 studies" as argued by Defendant.[21] Rather, Plaintiffs provided the district court with a chart identifying the key epidemiological studies applicable to each cancer type,[22] Dr. Panigrahy did the same in his rebuttal report,[23] and the district court cited both of those sources in the Order on appeal.[24]

---

[20] Appellee Brief p. 24-25.
[21] Appellee Brief p. 25.
[22] Doc. 211-2.
[23] Doc. 136-2 p. 46 et seq. ("select publications I cited in my original report are summarized in the Tables below").
[24] Doc. 399 p. 4 fn. 5 (citing Doc. 211-2 twice), p. 11 fn. 10 (citing Doc. 136-2).

Defendant cannot avoid the problematic fact that the district court failed to conduct a *Daubert* analysis of Dr. Panigrahy's opinions and evidence. As such, this case should be remanded so that the district court may perform the *Daubert* analysis that it should have done in the first instance.

## II. The Court does not have jurisdiction over the issues in Argument § II of Defendant's brief.

Instead of focusing on whether the district court erred in the Order certified for appeal (Doc. 399), Defendant uses the majority of its brief (all of Argument § II, p. 25-52) to write about dose and exposure issues that are beyond the Court's limited Rule 54(b) jurisdiction. As the Court has explained, "[a]ppellate jurisdiction over an appeal from an interlocutory decision certified under Rule 54(b) is limited to the rulings or orders certified by the district court." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1288 (11th Cir. 2010). "If it were otherwise, certification of one claim would effectively certify all decided claims, and that would undermine 'the historic federal policy against piecemeal appeals,' a policy that Rule 54(b) preserves[.]" *Id*. (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956)); *see also Fogade v. ENB Revocable Tr.*, 263 F.3d 1274, 1297 (11th Cir. 2001) ("Because no final judgment has been entered disposing of all the claims in this case, our appellate jurisdiction is confined to the issues made appealable under Rule 54(b)."); *United Industries, Inc. v. Eimco Process Equip. Co.*, 61 F.3d 445, 448 (5th Cir. 1995) ("We lack appellate jurisdiction over the two rulings not referenced by court's certification. In an

interlocutory appeal certified by the district court under … Rule 54(b), we have no jurisdiction to consider orders of the district court outside the scope of certification."); *S.H. v. Edwards*, 886 F.2d 292, 293 (11th Cir. 1989) ("This case is before the court on a very limited certificate issued by the district court under Rule 54(b) ... This ruling is not to be interpreted as involving *anything* other than the one issue presented." (emphasis in original)).

In this case, pursuant to Rule 54(b), the district court certified for appeal its Order dated March 18, 2024 (Doc. 399), excluding Dr. Panigrahy and entering summary judgment against the Plaintiffs in this appeal.

> The Court finds that the Panigrahy judgment was a final disposition of individual claims and there is no just reason for delay in considering a piecemeal appeal under these circumstances—with numerous Plaintiffs having unique claims predicated on different experts whose claims are still ongoing and other appeals going up at the same time. *See Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 722–23 (11th Cir. 2021); *see also Commodores Ent. Corp. v. McClary*, No. 6:14-cv-1335, 2016 WL 4474635, at *2 (M.D. Fla. Aug. 25, 2016) (Dalton, J.). The Court **CERTIFIES** under Federal Rule of Civil Procedure 54(b) that there is no just reason to delay the entry of a final appealable judgment against the Plaintiffs identified in the Panigrahy summary judgment Order (Doc. 399, p. 13) as well as Plaintiff Naho Komatsu as detailed above. The Clerk is **DIRECTED** to enter an amended judgment pertaining to Panigrahy (see Doc. 400) pursuant to Federal Rule of Civil Procedure 54(b).[25]

After making the Rule 54(b) certification, the district court entered an Amended Judgment (Doc. 424) against the Plaintiffs in this appeal "pursuant to this Court's

---

[25] Doc. 422 p. 2.

Order entered on March 18, 2024 (Doc. 399)…"[26] In their Notice of Appeal, Plaintiffs appealed "from the Amended Judgment entered in this action on May 31, 2024 (Doc. 424), and the corresponding Order entered on March 18, 2024 (Doc. 399)."[27] Thereafter, consistent with the district court's certification, Plaintiffs' opening brief in this appeal was limited to challenging the district court's Order (Doc. 399) excluding Dr. Panigrahy's general causation testimony and entering summary judgment.

Notwithstanding the limited scope of this appeal, Defendant challenges a different order entered by the district court (Doc. 370). In doing so, Defendant argues that, regardless of whether the district court abused its discretion in the Order certified for appeal (Doc. 399), "summary judgment was independently warranted for Lockheed Martin"[28] because the district court was "improperly persuaded"[29] and "erroneously convinced"[30] when making certain rulings in Doc. 370 relating to dose and exposure issues. But, as a separate order, the issues in Doc. 370 are beyond the scope of "the issues made appealable under Rule 54(b)." *Fogade*, 263 F.3d at 1297.

---

[26] Doc. 424 p. 1.
[27] Doc. 432 p. 1.
[28] Appellee Brief p. 25.
[29] Appellee Brief p. 36.
[30] Appellee Brief p. 39.

The district court refers to Doc. 370 as an "interim causation Order."[31] It applied to all of the plaintiffs in this action, not just the Plaintiffs in this appeal. The interim causation order was necessitated by Defendant's request early in this case to bifurcate general and specific causation for purposes of discovery and motion practice.[32] In the interim causation order, the district court determined that granting Defendant's request for bifurcation had been "ill advised":

> … bifurcating the inquiries was ill-advised in this case, as examining general causation artificially divorced from the entirety of the scientific record has proved significantly more difficult—and made the record far more voluminous and complicated—than necessary.[33]

> So the Court concludes that it must take the instant motions under advisement at this time. The Court will conduct the full general and specific causation inquiries together with the full scientific record before it, as it should have from the beginning.[34]

Accordingly, all the district court did in Doc. 370 was make a preliminary ruling about how it would later resolve, in subsequent orders, the then-pending general causation motions applicable to all plaintiffs.

As such, even if the district court had wanted to, it could not have certified the interim causation order for appeal under Rule 54(b), because it is not "a final judgment disposing of an entire claim." *Edwards*, 602 F.3d at 1289. In *Edwards*, the

---

[31] Doc. 399 p. 2 (referring to Doc. 370 as "an interim causation Order").

[32] Doc. 370 p. 21 (stating that "the general and specific causation inquiries were bifurcated here (at Lockheed's urging)…").

[33] Doc. 370 p. 21-22 fn. 13.

[34] Doc. 370 p. 21.

Court held that it did not have appellate jurisdiction to consider "*partial* dismissals" (emphasis in original) under Rule 54(b), even though the partial dismissals "came in the same order" as the issues certified for appeal, because partial dismissals "are not the stuff of Rule 54(b) certification." *Id*. Here, not only is Doc. 370 a separate order from the one certified for appeal, but Doc. 370 did not resolve any claims (or defenses). All it did was order "that the parties' general causation motions (Docs. 139–42, 144, 146, 148, 151, 152) are **TAKEN UNDER ADVISEMENT**."[35]

As a non-final interim order, this Court lacks jurisdiction to review Doc. 370 and, without jurisdiction, the Court "cannot proceed at all" with respect to Defendant's arguments in Argument § II of its brief. *English v. City of Gainesville*, 75 F.4th 1151, 1155 (11th Cir. 2023) ("We have a threshold obligation to ensure that we have jurisdiction to hear an appeal, for without jurisdiction we cannot proceed at all in any cause." (cleaned up)); *OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1355 (11th Cir. 2008) ("for this Court to exercise jurisdiction over an appeal, our jurisdiction must be both (1) authorized by statute and (2) within constitutional limits").

Nor would it make practical sense for the Court to review Doc. 370 because that order expressly contemplated additional orders in which the district court would "fulfill its *Daubert* gatekeeping responsibilities" with the benefit of "the full

---

[35] Doc. 370 p. 22.

scientific record."[36] As further explained by the district court, it would, in later orders, "closely examine the entirety of each expert's reasoning to determine whether their conclusions are predicated on a reliable methodology—which is exactly why the Court will wait to make this determination on the basis of a full scientific record."[37]

However, as already discussed, the district court did ***not*** fulfill its *Daubert* gatekeeping duties with respect to Dr. Panigrahy because it excluded him on the basis of a credibility issue, instead of on the basis of "the full scientific record." The district court did not consider a single epidemiological study related to general causation, nor did it consider any of the parties' specific causation evidence. Thus, Defendant's arguments in section II of its brief are nothing more than speculation about what the district court might have done if it had fulfilled its *Daubert* gatekeeping duties with respect to Dr. Panigrahy.

Defendant's reliance on *In re Deepwater Horizon BELO Cases*, 119 F.4th 937 (11th Cir. 2024) (*DH BELO II*) only underscores its improper approach. In *DH BELO II*, the Court commended the district court on its "meticulous and well-reasoned decision" and held that:

> [T]he district court did not err when it found that Solomon's cited studies failed to support her causation opinion. One of Solomon's studies focused on acute rather than chronic conditions. Another

---

[36] Doc. 370 p. 21-22.
[37] Doc. 370 p. 21 fn. 12.

assessed a different disease, asthma. As for the Rusiecki study, Solomon ignored its limitations, never mentioning its internal inconsistencies and the potential errors introduced by the subjects' self-reporting. The district court also did not err when it discarded Solomon's cursory discussion of the Hill factors: she addressed only three of the nine factors in a few brief sentences.

*Id*. at 946-47. Accordingly, *DH BELO II* shows that the district court must conduct a *Daubert* analysis of the causation evidence before appellate review, which has not occurred here.[38]

Defendant's impractical approach is further confirmed by the twelve-volume, 2,299-page Supplemental Appendix that it filed with the Court, the vast majority of

---

[38] Regarding the "threshold dose" issue that Defendant discusses at length, *DH BELO II* only held that the district court did not abuse its discretion when requiring the experts to identify a harmful level of the "oil and dispersants" at issue in that case, which are different substances from the genotoxic carcinogens at issue in this case. *See* Doc. 136-1 p. 23 ("For genotoxic carcinogens without sufficient evidence for a threshold-related mechanism, the scientific community assumes that a non-threshold dose-response relationship exists. In this case, all 7 carcinogens … are genotoxic."). Even so, the Court went on to explain that "*threshold dose aside*," (emphasis added) "[t]he district court did not err when it found that Solomon and Freeman failed to support their opinions with epidemiology, dose-response relationship, or background risk of disease." 119 F.4th at 947. Here, in contrast, Dr. Panigrahy has supported his opinions with epidemiology discussed throughout his initial report (Doc. 136-1) and his rebuttal report (Doc. 136-2) as well as evidence of dose-response relationships, *see, e.g.,* Doc. 136-1 p. 364 ("A dose-response relationship was identified with TCE after adjustment for the confounding effect of tobacco smoking and BMI."), and Drs. Kendall and Cowan have offered evidence as to background risk of disease. *See* § III below. Regarding threshold dose, the district court indicated in the interim causation order that it would "address the parties' disputes on the linear no-threshold dose-response model in the context of the full *Daubert* analysis." Doc. 370 p. 19 fn. 11. However, the district court has not conducted "the full *Daubert* analysis" that it referred to in Doc. 370, which it must do before this Court can review for error.

which includes causation evidence that has not been considered by the district court. For example, Defendant presents evidence from the "Bellwether Group 1 specific-causation proceedings,"[39] and makes arguments like "Dr. Panigrahy's specific-causation opinions [are] … unscientific speculation[,]" but the district court never reached any specific causation issues with regard to the Plaintiffs in this appeal, since it (erroneously) excluded Dr. Panigrahy based on a credibility issue in his general causation report.

In effect, Defendant is putting the cart before the horse, asking this Court to review the full scientific record and perform *Daubert* gatekeeping responsibilities, without the district court having done so, which is not procedurally proper. *See MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1306 (11th Cir. 2022) ("Because the district court did not address these issues, we decline to do so here in the first instance."); *U.S. v. McAllister*, 77 F.3d 387, 389 (11th Cir. 1996) ("As a general rule, this court will not address an issue not decided by the district court.").

Nonetheless, regardless of procedural impracticalities, the Rule 54(b) case law unambiguously forecloses appellate review of the issues in Defendant's Argument § II because they are beyond the Court's jurisdiction. Here, the Court's jurisdiction is limited to reviewing whether the district court abused its discretion when excluding

---

[39] Appellee Brief p. 44-50

Dr. Panigrahy's general causation testimony and entering summary judgment against the Plaintiffs (Doc. 399).

### III. The district court was required to review Drs. Kendall and Cowan's general causation opinions.

Continuing with the theme of seeking *Daubert* review in the first instance in this Court, Defendant argues that Dr. Kendall's toxicology opinions are "inadmissible ipse dixit" and that Dr. Cowan's statistical analysis does not support a background risk assessment.[40] However, those same arguments have been briefed in the district court but have not been decided as to the Plaintiffs in this appeal. Therefore, the only reasonable conclusion at this juncture is that the district court erred when entering summary judgment against the Plaintiffs in the Order certified for review (Doc. 399), by not considering Drs. Kendall and Cowan's general causation evidence. *See Moore*, 633 Fed. Appx. at 931 (reversing and remanding because the Court was "unable to evaluate whether the expert testimony raised a genuine dispute of material fact because the district court omitted from its opinion any reference whatsoever to that testimony. On remand, the court should accordingly evaluate the testimony under the usual standards for admissibility, *see* Fed. R. Evid. 702, and decide what relevance, if any, the testimony has to the creation of a genuine

---

[40] Appellee Brief p. 53-55.

dispute of material fact. The court should not simply ignore the testimony or deem the expert not credible.").

**CONCLUSION**

The district court's order excluding Dr. Panigrahy and entering summary judgment should be reversed and the case remanded so that the district court may conduct a proper *Daubert* analysis.

Dated: May 5, 2025    Respectfully submitted,

/s/ Josh Autry     /s/ Rene F. Rocha
Josh Autry      Rene F. Rocha
Morgan & Morgan    Morgan & Morgan
333 W Vine St, Ste 1200  400 Poydras St, Ste 1515
Lexington, KY 40507   New Orleans, LA 70130
859-899-8785     954-318-0268
jautry@forthepeople.com  rrocha@forthepeople.com

/s/ Adam P. Bergeron
Adam P. Bergeron
Morgan & Morgan
47 Maple St, Ste 104D
Burlington, VT 05401
407-974-2075
adambergeron@forthepeople.com

*Attorneys for Appellants*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(ii) because, excluding the parts exempted by Fed. R. App. P. 32(f), this brief contains 5,521 words.

*/s/ Adam P. Bergeron*
